FILED

OCT 2 7 2004

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIF.

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----ooOoo----

CALIFORNIA REPUBLICAN PARTY;
CALIFORNIA DEMOCRATIC PARTY;
and ORANGE COUNTY
REPUBLICAN PARTY;

NO. CIV-S-04-2144 FCD PAN

          Plaintiffs,

     v.                          MEMORANDUM AND ORDER

FAIR POLITICAL PRACTICES
COMMISSION; LIANE RANDOLPH,
in her official capacity;
SHERIDAN DOWNEY II, in his
official capacity; THOMAS KNOX,
in his official capacity;
PHILLIP BLAIR, in his official
capacity; PAMELA KARLAN, in her
official capacity,

          Defendants.
_____/

----ooOoo----

     On October 12, 2004, plaintiffs, California Republican Party
("CRP"), California Democratic Party ("CDP"), and Orange County

1

1  Republican Party ("OCRP")(collectively "plaintiffs") filed a
2  complaint with this court challenging the constitutionality of
3  two provisions of the California Political Reform Act ("PRA"),
4  Govt. Code § 81000, et seq.   On October 20, 2004, plaintiffs
5  filed a motion for a preliminary injunction and an application to
6  shorten time.   That same day, the court granted plaintiffs'
7  motion to shorten time, scheduled the matter for hearing on
8  October 26, 2004, and set an expedited briefing schedule.
9  (October 20, 2004 Order Granting Plaintiff's Application to
10 Shorten Time on Motion for Preliminary Injunction at 2.)

11      Having fully considered the arguments raised by counsel at
12 the October 26 hearing and in written memoranda filed with the
13 court, and for the reasons outlined herein, the court grants
14 plaintiffs' motion for preliminary injunction.

15                    **FACTUAL AND PROCEDURAL HISTORY**

16      On November 5, 1996, California voters enacted the
17 "California Political Reform Act of 1996," or "Proposition 208"
18 ("Prop. 208"), an initiative statute that made sweeping changes
19 to California's Political Reform Act.   Among its various
20 provisions, Prop. 208 required that any committee paying for an
21 advertisement supporting or opposing a ballot measure identify on
22 the face of the advertisement the committee's two largest
23 contributors of $50,000 or more.[1]   Cal. Govt. Code § 84503.

24 _____

25          [1]    Cal. Govt. Code §84503 provides:
            (a) Any advertisement for or against any ballot measure
26          shall include a disclosure statement identifying any
            person whose cumulative contributions are fifty
            thousand dollars ($50,000) or more.
27          (b) If there are more than two donors of fifty thousand
            dollars ($50,000) or more, the committee is only
28          required to disclose the highest and second highest in

                                    2

1   Prop. 208 mandated similar disclosure requirements when

2   committees make independent expenditures for candidates or ballot

3   measures.[2]  Cal. Govt. Code § 84506.[3]

4        Shortly after Prop. 208's passage, it was subject to a legal

5   challenge in this court.  <u>California Pro Life Council Political</u>

6   <u>Action Committee v. Scully</u>, 989 F. Supp. 1282 (1998).   On January

7   6, 1998, this court entered a preliminary injunction barring

8

9

10  _____

11       that order. In the event that more than two donors meet
         this disclosure threshold at identical contribution
12       levels, the highest and second highest shall be
         selected according to chronological sequence.

13
         [2]    Cal. Govt. Code § 84506 provides:
14       (a) A broadcast or mass mailing advertisement
         supporting or opposing a candidate or ballot measure,
15       that is paid for by an independent expenditure, shall
         include a disclosure statement that identifies both of
16       the following:
         (1) The name of the committee making the independent
17       expenditure.
         (2) The names of the persons from whom the committee
18       making the independent expenditure has received its two
         highest cumulative contributions of fifty thousand
19       dollars ($50,000) or more during the 12-month period
         prior to the expenditure. If the committee can show, on
20       the basis that contributions are spent in the order
         they are received, that contributions received from the
21       two highest contributors have been used for
         expenditures unrelated to the candidate or ballot
22       measure featured in the communication, the committee
         shall disclose the contributors making the next largest
23       cumulative contributions of fifty thousand dollars
         ($50,000) or more.

24       (b) If an acronym is used to identify any committee
         names required by this section, the names of any
25       sponsoring organization of the committee shall be
         printed on print advertisements or spoken in broadcast
26       advertisements.
     Cal. Govt. Code § 84506.
27
         [3]    All further statutory references are to the California
28   Government Code unless otherwise noted.

enforcement of Proposition 208.[4]  While that injunction was in place and before resolution of the permanent injunction, the voters enacted Proposition 34, which superceded most of Prop. 208's provisions, but left intact the above-described disclosure provisions contained in Government Code sections 84503 and 84506.

The passage of Proposition 34 rendered moot most of the plaintiffs' claims in <u>Scully</u>, except those raised by professional slate mail vendors challenging the disclosure requirements in section 84503.  In an unpublished order, this court permanently enjoined enforcement of section 84503 against slate mailer organizations, though its provisions remain enforceable against other forms of political committees.

Plaintiffs are subject to the disclosure requirements in sections 84503 and 84506.  As organized political party committees, plaintiffs advance the shared political beliefs of their members by engaging in political activities, including, <u>inter alia</u>, recruiting and supporting candidates for elective office, taking public positions on policy issues, engaging in voter registration, conducting state conventions, and organizing get-out-the-vote activities.  (Declaration of Kathleen Bowler ("Bowler Decl.") ¶ 4; Declaration of Micahel Vallante ("Vallante Decl.") ¶ 5.)

Under the PRA, plaintiffs are "general purpose committees" in that they are formed to support or oppose more than one

_____

[4]      The court takes judicial notice of the March 1, 2001 order in <u>California Prolife Council v. Scully</u>, No. Civ. S-96-1965 LKK/DAD.  Fed. R. Evid. 201.

4

candidate or ballot measure.[5]  This is distinguishable from a
"Primarily Formed Committee" which is defined as a committee
formed primarily to support or oppose a single candidate or
measure or group of candidates and/or ballot measures "voted upon
in the same city, county, or multicounty election." § 82047.5.
Both general purpose committees and primarily formed committees
must comply with the disclosure requirements in sections 84503
and 84506.

Pursuant to implementing regulations promulgated by
defendant Fair Political Practices Commission ("FPPC"), in order
to comply with the disclosure provisions in sections 84503 and
84506, a committee must "explicitly indicate that the contributor
or contributors were major donors to the committee by stating,
for example 'major funding by' or 'paid for by.'" Cal. Code Regs.
tit. 2 § 18450.4(a).

Both section 84503 and 84506 were amended recently by Senate
Bill 604 ("SB 604"), an urgency statute which became effective
upon signature of the Governor on September 10, 2004.  Primarily,

---

[5]     Section 82027.5 provides:
(a) "General purpose committee" means all committees
pursuant to subdivision (b) or (c) of Section 82013,
and any committee pursuant to subdivision (a) of
Section 82013 which is formed or exists primarily to
support or oppose more than one candidate or ballot
measure, except as provided in Section 82047.5.
(b) A "state general purpose committee" is a political
party committee, as defined in Section 85205, or a
committee to support or oppose candidates or measures
voted on in a state election, or in more than one
county.
(c) A "county general purpose committee" is a committee
to support or oppose candidates or measures voted on in
only one county, or in more than one jurisdiction
within one county.

1  the amendments changed the window of time used to determine which
2  contributors qualified as the "two largest contributors of
3  $50,000 or more."  Stats. 2004, c. 478 (S.B. 604) § 13.   Prior to
4  SB 604's passage, the largest contributors were defined from the
5  date the committee filed its statement of organization and ending
6  seven days prior to the time the advertisement was sent to the
7  printer or broadcast station.  As amended, the window begins "the
8  day the committee made its first expenditure to qualify, support
9  or oppose the measure and end[s] seven days before the
10 advertisement is sent to the printer or broadcast station."  §
11 84502.  Under the revised definitions, the two largest
12 contributors to the CDP in the preceding 12 months are the
13 California Teachers Association ("CTA") and Senator John Burton
14 ("Burton"). (Bowler Decl. ¶ 11.)  For the CRP, the two largest
15 contributors are Chevron Texaco and Alex G. Spanos ("Spanos").
16 (Vallante Decl. ¶ 6.)  Lastly, the largest contributors over the
17 preceding 12 months to OCRP are the New Majority Committee ("New
18 Majority") and the CRP.  (Declaration of Scott Baugh ("Baugh
19 Decl. ¶ 6.)

20      The disclosure requirements mandate that plaintiffs list the
21 above-referenced contributors on all advertisements made in
22 conjunction with the November 2, 2004 election, including some
23 advertisements advocating positions which the contributors
24 actively oppose or on which they have no public position.  (See
25 Bowler Decl. ¶ 15; Baugh Decl. ¶ 6; Vallante Decl. ¶ 6.)

26      According to plaintiffs, these mandated disclosures violate
27 their First and Fourteenth Amendment rights in that they impair
28 the effectiveness of their political advertisements by coopting

valuable print space and, in some cases, linking the political message to contributors against which potential readers might harbor bias.[6] (See e.g., Vallante Decl. ¶ 10.)

## STANDARD

The Ninth Circuit recognizes two tests for determining whether to grant a preliminary injunction.

Under the traditional test, the movant must establish four factors to obtain injunctive relief: 1) a likelihood of success on the merits; (2) a significant threat of irreparable injury; (3) that the balance of hardships favors the applicant; and (4) whether any public interest favors granting an injunction. Raich v. Ashcroft, 352 F.3d 1222, 1227 (9th Cir. 2003).

Alternatively, the Ninth Circuit has articulated the test as requiring the moving party to demonstrate either (1) a combination of probable success on the merits and the possibility of irreparable injury or (2) that serious questions are raised and the balance of hardships tips in its favor.  These two formulations are not inconsistent.  Rather, they represent two points on a sliding scale in which the required degree of irreparable harm increases as the possibility of success decreases.  Roe v. Anderson, 134 F.3d 1400, 1402 & n. 1 (9th Cir. 1998), aff'd, Saenz v. Roe, 526 U.S. 489 (1999).

## ANALYSIS

1. **Irreparable Injury**

To obtain a preliminary injunction plaintiff must first demonstrate that there exists a significant threat of irreparable

---

[6]   The First Amendment is made applicable to the states by the Fourteenth Amendment.

7

injury." <u>Oakland Tribune, Inc.</u>, 762 F.2d at 1376.  In the absence of a significant showing of irreparable injury, the court need not reach the issue of likelihood of success on the merits. <u>See</u> <u>id.</u>

Loss of First Amendment freedoms generally is regarded as an irreparable injury, even if short in duration.  <u>Elrod v. Burns</u>, 427 U.S. 347, 272 (1976).  Here, the disclosure requirements may deprive plaintiffs of their ability to keep the identity of their contributors separate from their political message.[7]  Connecting the political message to specific groups may prejudice voters against the position advocated.  As an example, plaintiffs note that the disclosure requirement that Chevron Texaco be listed as a major donor on all CRP advertisements may reduce the advertisements' effectiveness with voters who view dislike that corporation.  Similarly, voters who dislike labor unions may be biased against CDP advertisements which identify CTA as a major contributor.  The Supreme Court has recognized the "respected tradition of anonymity in the advocacy of political causes," in part based on the understanding that ideas may at times "be more persuasive if . . . readers are unaware of [the speaker's]

---

[7]     Plaintiffs also provide testimony from party officials that contributors may curtail the amount of contributions in the future to avoid qualifying for on-publication disclosure of the contributors' identity.  Defendants argue that this injury is speculative because plaintiffs have not submitted testimony from any donor that has refrained from contributing in order to avoid on-publication disclosure of the donor's identity.  However, for purposes of this motion, it is not necessary that the court decide whether this injury is sufficiently concrete or imminent since plaintiffs have established the presence of independent injury.

identity."[8]   McIntyre v. Ohio Elections Comm'n, 514 U.S. 334, 343 (1996); see also American Civil Liberties Union of Nevada v. Heller, 378 F.3d 979, 988 (9th Cir. 2004.)   Thus, plaintiffs have identified an irreparable injury likely to occur unless the injunction is granted.

## 2.   Likelihood of Success on the Merits

Plaintiffs also must demonstrate either likely success on the merits or that serious questions are raised and the balance of hardships tips in its favor.

All parties agree that the challenged statutes must satisfy strict scrutiny. Heller, 378 F.3d at 992-993 ("As a content-based limitation on core political speech, the Nevada Statute must receive the most 'exacting scrutiny' under the First Amendment.")(quoting McIntyre, 514 U.S. at 346.   Such requirements survive strict scrutiny only if they are "narrowly tailored to serve an overriding state interest." Id. (quoting McIntyre, 514 U.S. at 357).   More specifically, "a content-based regulation of constitutionally protected speech must use the least restrictive means to further the articulated interest." Id. (quoting Foti v. City of Menlo Park, 146 F.3d 629, 636 (9th Cir.1998)).

Defendants' asserted purpose for requiring on publication disclosure of the two major contributors is to provide relevant

---

[8]   Defendants argue that the contributors are not in fact anonymous, since they must disclose their identities under contribution reporting requirements in existing law.   However, "it is not just that a speaker's identity is revealed, but how and when that identity is revealed, that matters in a First Amendment analysis of a state's regulation of political speech." Heller, 378 F.3d at 991.

information to voters.  Specifically, defendants note that voters' "capability of evaluating who is doing the talking is of great importance, and expecting voters to accomplish such evaluation solely by reference to the after-the-fact disclosure reports on file with the Secretary of State is unrealistic." (Opp'n at 12.)  The Supreme Court has recognized that informing voters regarding campaign contributors is a compelling purpose and plaintiffs do not contend otherwise.

However, the governmental objective of informing voters will not justify *all* disclosure requirements; what is sufficiently compelling to justify one disclosure requirement may not suffice to justify another.  In Heller, supra, the Ninth Circuit confronted a Nevada statute requiring on-publication disclosure of parties responsible for any materials relating to an election of a candidate or ballot measure.  In support of the disclosure requirements, the defendant in Heller proffered several governmental interests, including the need to provide information to voters regarding the identity of campaign donors. The Ninth Circuit specifically rejected as "not sufficiently compelling," the government's stated interest of informing voters, finding that "the simple interest in providing voters with additional relevant information does not justify a state requirement that a writer make statements or disclosures she would otherwise omit."  Heller, 378 F.3d at 993 (quoting Mcintyre, 514 U.S. at 348-349).

Admittedly, the statute in Heller was broader than that challenged here.  However, the factual distinctions between the statutes do not undermine the applicability of Heller's

reasoning.   Relying heavily on the Supreme Court decision in McIntyre, the Heller court noted that "both [cases] involve campaign statutes that go beyond requiring the reporting of funds used to *finance* speech to affect the *content of the communication itself*.   This case and McIntyre therefore involve governmental proscription of the speech itself unless it conforms to prescribed criteria."   Id. at 987 (emphasis in original).   Like both Heller and McIntyre, the major donor disclosure requirements at issue here go beyond the reporting of funds that finance speech to affect the content of the advertisements.[9]   Because these types of on-publication disclosure requirements are "considerably more intrusive than simply requiring [speakers] to report to a government agency," they are a "content-based restriction on core political speech" which must receive "the most 'exacting scrutiny' under the First Amendment.   Heller, 378 F.3d at 992 (quoting McIntyre, 514 U.S. at 346).

Defendants cannot satisfy that test here because existing off-publication requirements are less restrictive on speech and more effective in meeting the purpose of informing voters. Contrary to defendants' suggestion during oral argument that contributor information is available only in "dusty" old files at the Secretary of State's office, in fact voters can easily obtain access to the identities of a political party's contributors through recourse to reported contributor information filed with the Secretary of State.   In the last 16 days before an election, committees must disclose contributions within 24 hours.   This

---

[9]   Conceivably, some form of on-publication disclosure requirements could survive after Heller and McIntyre.

11

information is available over the internet in a user-friendly database.  Indeed, defendants' counsel made use of this very system to calculate for the court the amount of money expended thus far on political advertising in California for the November 2004 election.  (See Opp'n at 12 n. 7.)  Consequently, voters can obtain daily updated information regarding a speaker's contributors by accessing the Secretary of State's on line records.

Further, the Secretary of State's contributor report information provides a far more complete and accurate picture to voters than the limited major donor disclosures mandated by sections 84503 and 84506.  The latter disclosures require political party committees to single out on the face of the document two out of tens of thousands of contributors, many of whom also make sizeable contributions.  This "visual byte" provides a limited and potentially distorted picture of a political party's contributors.

In the context of primarily formed committees, this bit of information might prove useful at identifying the true "speaker." As the Heller court noted, "individuals and entities interested in funding election-related speech often join together in ad hoc organizations with creative but misleading names." Heller, 378 F.3d at 994.  In such cases, the government may indeed have a compelling interest in unveiling for the voters the true "speakers" behind such an advertisement.  However, this is not such a case.  In the context of political parties, the true "speaker" is the political party, whose name is disclosed on the face of the advertisement.

12

In fact, identifying a political party's two largest contributors as the "speakers" could mislead voters because these contributors may not endorse the message in the advertisement. Contributions are made to political parties for many reasons, including agreement with a party's general philosophy, support of certain platform positions, or simply opposition to the competing party. The political parties in turn use this funding to support a wide variety of activities, including dissemination of advertisements in support of, or opposition to, myriad candidates and ballot measures. It is not difficult to imagine a situation in which the contributor will be identified as a major donor on an advertisement containing a political message with which the contributor does not agree.[10] To the contrary, it seems nearly inevitable in light of the plethora of positions advocated by the political parties in a given year. However, the court need not speculate as plaintiffs have identified concrete examples from this election cycle. Plaintiffs note that one of the CDP's major donors, CTA, is officially neutral on the 15th District State Senate election, as well as Propositions 63 and 72. Yet CTA will be identified as a major funding source on mail endorsing Democrat Peg Boland in the 15th Senate race and taking positions on most statewide ballot measures (Id.)(citing Nunez Decl. ¶ 8-9,

---

[10] One of the principal arguments raised by defendants' counsel during argument was the need for full discovery before a hearing on the merits, at which plaintiff would be able to provide the court with the actual number of times a major contributor identified on an advertisement disagreed with the advertisement's message. While there may be circumstantial evidence on this issue, absent an extraordinary degree of candor, the court wonders how the state could constitutionally elicit disclosure of one's political beliefs or preferences.

Bowler Decl.  ¶ 15.)   In addition, plaintiffs note that the New Majority Committee, one of the two largest contributors to the OCRP, supports Proposition 62 and has contributed $25,000 to Californians for an Open Primary Committee, a Primarily Formed Committee advocating passage of Proposition 62.  However, the OCRP opposes Proposition 62 and the New Majority Committee will be identified as providing major funding for the OCRP's walk piece which advocates defeat of Proposition 62.  (Baugh Decl. ¶ 6.)   In these situations, voters may infer inaccurately that contributors, such as CTA and the New Majority Committee endorse the political messages espoused in the advertisement.[11]  By potentially misleading voters, the disclosure of major donors to political parties may actually undermine the stated governmental interest of providing information to voters regarding the "identity of the speaker."

Consequently, the court finds that plaintiffs have demonstrated serious questions going to the merits of their claim that the disclosure requirements in sections 84503 and 84506 unconstitutionally infringe their First Amendment right to free speech and association.

**3.   Balance of Hardships**

The court is concerned that plaintiffs waited until less than two weeks before the general election to seek injunctive relief.  As of the issuance of this order, there are just five

---

[11]   By contrast, in the context of a Primarily Formed Committee, such inference may be reasonable.  For example, one might reasonably infer that the New Majority Committee supports Proposition 62 in light of its contribution to the Californians for an Open Primary Committee, which is organized for the primary purpose of advocating Proposition 62's passage.

14

mail days before the election.  Presumably, at this point, the campaigns have been in full swing for months and most of the advertisements have been printed and sent.  Consequently, much of the asserted injury already has occurred.  However, the fact remains that plaintiffs have demonstrated an ongoing harm over the next few days which has First Amendment implications. Further, the <u>Heller</u> decision's rejection of on-publication disclosure requirements substantially bolsters plaintiffs' position.

In light of these considerations, and because the state has offered no authority for denying relief on the basis of laches, in a First Amendment case where the plaintiffs delay appears to be less than two months, the court feels constrained to grant plaintiffs' request for a preliminary injunction.

The court stresses that this is a provisional remedy. During oral argument, defendants' counsel expressed some degree of frustration regarding the limited time provided to prepare for hearing in this case.  This is understandable, particularly in light of the fact that plaintiffs created the exigency through their delay in filing the complaint.  However, defendants will have every opportunity to fully develop the factual record and legal issues in this case and make their case on the merits.  The court holds only that, in light of the constitutional dimensions of the injury, plaintiffs have met their burden to obtain injunctive relief.  The court intends to hear the case on the merits on an expedited schedule, well prior to any future election cycle.

///

**CONCLUSION**

For the foregoing reasons, it is hereby ordered that defendants and all of their respective officers, agents, servants, employees, representatives, and attorney and those persons in active concert or participating with any of the above with actual notice of this Preliminary Injunction, are hereby restrained and enjoined from enforcing Cal. Govt. Code §§ 84503 and 84506 against plaintiffs or similarly situated political party committees registered with the Secretary of State as general purpose committees pending entry of a final judgment in this case.

Pursuant to Fed. R. Civ. P. 65(c) and Local Rule 65-231(d)(1), the aforementioned Preliminary Injunction shall be effective upon plaintiffs' filing of a bond in the amount of $1,000.00.

IT IS SO ORDERED.

Dated: October 27, 2004

FRANK C. DAMRELL, Jr.
UNITED STATES DISTRICT JUDGE

16

United States District Court
for the
Eastern District of California
October 27, 2004

* * CERTIFICATE OF SERVICE * *

2:04-cv-02144

CA Republican Party

   v.

Fair Political Prac

_____

I, the undersigned, hereby certify that I am an employee in the Office of
the Clerk, U.S. District Court, Eastern District of California.

That on  October 27, 2004,  I SERVED a true and correct copy(ies) of
the attached, by placing said copy(ies) in a postage paid envelope
addressed to the person(s) hereinafter listed, by depositing said
envelope in the U.S. Mail, by placing said copy(ies) into an inter-office
delivery receptacle located in the Clerk's office, or, pursuant to prior
authorization by counsel, via facsimile.

        Charles Herbert Bell Jr                MP/FCD
        Bell McAndrews Hiltachk and Davidian LLP
        455 Capitol Mall
        Suite 801
        Sacramento, CA  95814

        Maria Luisa Menchaca
        Fair Political Practices Commission
        428 J Street
        Suite 800
        Sacramento, CA  95814

        Douglas John Woods
        Attorney General's Office for the State of California
        PO Box 944255
        1300 I Street
        Suite 125
        Sacramento, CA  94244-2550

        Deborah Barthel Caplan
        Olson Hagel and Fishburn
        555 Capitol Mall
        Suite 1425
        Sacramento, CA  95814

Jack L. Wagner, Clerk

by: Deputy Clerk